STATE of Missouri ex rel. Sgt. Chester
A. RICE, Jr., Respondent,

v.

Steven C. BISHOP, Appellant.

No. WD 46267.

Missouri Court of Appeals,
Western District.

June 8, 1993.

As Modified July 22, 1993.

Rehearing Denied July 27, 1993.

Kevin E. Phillips and Dale H. Close, Kansas City, for appellant.

Michael Allan Wee, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SHANGLER, Judge.

The circuit court set aside a five day suspension of Sergeant Chester A. Rice imposed by the Chief of Police of the Kansas City, Missouri Police Department under §§ 85.500 and 84.610, RSMo 1986. The suspension was an order not subject to administrative review and so was a noncontested administrative case subject to judicial review under § 536.150. The Chief of Police appeals the judgment of the circuit court.

The five day suspension was imposed by Chief Bishop as discipline for Sergeant Rice's violation of Kansas City Police Department Personnel Policy Number 201–4, Code of Ethics and Rules of Conduct, Section II, Rule 9, which provides:

Members will conduct themselves with dignity, courtesy and efficiency.

The discipline followed the investigation of the Internal Affairs Unit concerning Rice's conduct on March 16, 1991 officially described as "an inappropriate comment to a subordinate officer."

It was the evidence that at 7 a.m. on March 16, 1991, at the end of the tour of duty for the day, Officer Sharon Laningham went into the office of Sergeant Clarence Rice to hand in her report. Laningham was a probationary officer and Rice was her supervisor. Laningham described the colloquy that ensued:

Q. Did Sergeant Rice make any comment to you on that day about your body?

A. Yes, I had had a cold for a week or so and had been froggy for lack of a better word, on the radio and he inquired as to how my cold was and I responded I probably need some medication, I need to go home and at that point, he said "You probably need a chest rub."

Q. And did you make any response to that?

A. I laughed and said "That probably wouldn't take long."

Q. Then what did you do?

A. Left the room.

Q. How did you interpret that comment?

A. I thought it was a stupid joke.

Q. Did you interpret that comment as any kind of a medical opinion or suggestion for medical help?

A. No.

There were also present at the time two other officers, John Rogers and Greg Lomas. Lomas was no longer a police officer at the time of the hearing. Laningham did not make any complaint about the occurrence. She "didn't wish for this to be an incident to come to anybody's attention." The complaint was made by Officer Rogers, who considered the comment by Sergeant Rice to Laningham inappropriate. Rogers lodged the complaint with Captain Marilyn Fortman, next after Rice in the chain of command for that unit. An investigation by Internal Affairs was conducted. Chief of Police Bishop rested the decision to discipline and suspend Sergeant Rice upon the report by Internal Affairs as well as Rice's demeanor record, personnel jacket and performance over the years. Sergeant Rice sought review of the suspension in the circuit court under § 536.150.1, RSMo 1986 and Rule 100.01. The circuit court conducted a hearing *de novo* as an original action under that section, entered findings of fact and conclusions of law, and rendered judgment. § 536.150.1; *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 95 (Mo.App.1982).

The formal Findings of Fact and Conclusions of Law are introduced with the preface:

This Court commends the members of the Kansas City, Missouri Police Department's Internal Affairs Division and Respondent [Police Chief Bishop] for their awareness and concern for sexual harassment or sexually offensive conduct in the workplace. Respondent's efforts to eliminate sexual harassment within the police ranks is to be praised.

Conclusion of law 6 then declares:

The Court finds the regulation was inappropriately applied to the facts of this case. What is the test to determine the validity of a regulation? The language of the regulation must be set out in terms which the ordinary person can un-

derstand without sacrificing the public interest. There are limitations in the English language when you try to be specific and manageably brief. *Personnel Policy Number 201–4, Code of Ethics and Rules of Conduct, Section III, paragraph 9 does not advise officers concerning their relationship with other officers. The rule is appropriate for application in the officers' dealing with the general public. Common sense dictates that the separate and more specific regulation dealing with sexual harassment is more appropriate in this case. Neither the testimony nor the evidence indicates any harassment on the part of Relator.*

[Emphasis added, citations omitted.]

The judgment entered by the circuit court adjudicated that the decision of Police Chief Bishop to suspend Sergeant Rice for five days without pay was "arbitrary and capricious as there was no substantial evidence in this instance to support the decision," and no violation of the police department personnel policy cited occurred. The court ordered that the suspension be set aside and that all lost pay and allowances be restored to Sergeant Rice.

It is evident that the judgment rests on mistaken legal premises on grounds never raised and on evidence irrelevant to the adjudication of the issue before the circuit court.

The discipline imposed upon Sergeant Rice was for violation of the police personnel policy, relating to the Code of Ethics and Rules of Conduct, that members of the police department "will conduct themselves with dignity, courtesy and efficiency." The repartee with Officer Laningham was found to be "an inappropriate comment to a subordinate officer," and in violation of the policy. The citation, decision and discipline were not about sexual harassment as such as the theory of judgment supposes— but conduct that did not comport with dignity, courtesy and efficiency.

The conclusion of law that the police personnel policy cited against Rice does not appertain to relationships with other officers, but with the general public, is gratu-

itous. There was no pleading or contention before the circuit court that the rule on which the sanction imposed on Rice rests was not operative as to the conduct of one officer to the other, or was not a sufficiently clear advisory to sustain the imposition of discipline. Nor was there pleading or contention that the complaint was only guised as a breach of the rule that police personnel conduct themselves with dignity, courtesy and efficiency, but was actually for sexual harassment, a subject not encompassed in that formulation.

■ The petition for writ of certiorari, the remedy for judicial inquiry selected by Rice for redress under § 536.150.1, contends only that the comments did not violate the police code of ethics and rules of conduct, that the suspension was unlawful for that reason and an abuse of discretion. The judgment entered by the circuit court is not responsive to the issues made by the pleadings, is therefore *coram non judice*, and to that extent, void. *Brown v. Wilson*, 348 Mo. 658, 155 S.W.2d 176, 180[13–16] (banc 1941); *Keen v. Dismuke*, 667 S.W.2d 452, 453[1, 2] (Mo.App.1984).

It is palpable from conclusion of law 6 that the circuit court treated the inquiry on review as a species of sexual harassment, and adjudicated the conduct alleged against Rice on that legal theory. It is also palpable from conclusion of law 7 "The Court further finds that there is no substantial evidence in the record to support Respondent's [Chief of Police Bishop's] decision" that the standard the court applied does not appertain to the review of an administrative action under 536.150.1.

■ It is by now established that the role of the circuit court on review of an administrative decision in a noncontested case is more encompassing than on a review of a contested case. The circuit court on a review under § 536.150 conducts a hearing *de novo* on an original action to determine *post hoc* on the facts as found by the court whether the administrative decision conforms to the constitution, the laws, and is not otherwise "unreasonable, arbitrary or capricious or involves an abuse

of discretion." *Phipps v. School Dist. of Kansas City,* 645 S.W.2d at 95; *State ex rel. Valentine v. Board of Police Commissioners,* 813 S.W.2d 955, 957[2, 3] (Mo.App. 1991). In a word, the circuit court does not review evidence as in contested cases, but determines evidence, and on the facts as found adjudges the validity of the administrative decision. *Phipps v. School Dist. of Kansas City,* 645 S.W.2d at 95. Because the court on such a review reaches judgment without reference to the adjudicative information on which the administrative decision issued, it owes no deference of credibility to that decision. *Id.* at 96. Accordingly, that element of the judgment, "there was no substantial evidence in this instance to support the decision [of suspension]," mistakenly applies the standard of adjudication of circuit court review in a contested case, and is erroneous. *State ex rel. Fortney v. Joiner,* 797 S.W.2d 848, 852 (Mo. App.1990).

◼ This sweep of adjudicative prerogative accorded a circuit court by § 536.150.1 is foreshortened where the review involves the exercise of discretion. The provision in § 536.150.1, that in such a judicial inquiry "the court shall not substitute its discretion for discretion legally vested" in the administrative officer confines the judgment to "exclusively legal considerations." *Phipps v. School Dist. of Kansas City,* 645 S.W.2d at 95. It thereby takes care that the court not infringe on an authority reserved to the legislative or executive branches. *Id.* The power to discipline and suspend that § 84.-500 vests in the Chief of Police of Kansas City involves such a discretion. The lawfulness of the exercise of that discretion was placed in issue by the pleadings in the circuit court, but was not adjudicated by the judgment.

◼ Section 84.500 makes the Chief of Police of Kansas City "responsible to the board of police commissioners for the proper administration of police affairs and suppression of crime in such cities and the execution of policy pertaining to police affairs as determined by the board of police commissioners," and to these ends, the Police Chief is given the power to "discipline and suspend all police officers and policemen." Among the policies determined by the board of commissioners is that "[m]embers [of the police force] will conduct themselves with dignity, courtesy and efficiency."

The exercise of authority of Police Chief Bishop to "discipline and suspend" Sergeant Rice under the statute, therefore, entailed a determination that his conduct did not comport with the official policy and so was worthy of discipline. The statute does not require discipline, but leaves that to the discretion of the Police Chief. Thus, after the Police Chief Bishop found the facts and applied the law [the personnel policy] to the facts found, the statute did not dictate the action that the Police Chief must take, but left that his to discretion. It is an act of judgment typically prompted by the public interest in a disciplined and effective police force, and other such extralegal considerations, that determine the exercise of such a discretion. *Belton v. Board of Police Commissioners,* 708 S.W.2d 131, 138[9] (Mo. banc 1986). It is that exercise of discretion which under § 536.150.1 the court may not substitute for in favor of its own. *See* 20 NEELY AND SHINN, ADMINISTRATIVE PRACTICE AND PROCEDURE § 12.49 (1986); Shewmaker, *Procedure Before, and Review of Decisions of, Missouri Administrative Agencies,* 37 V.A.M.S., 146–148 (1953); *Missouri Church of Scientology v. State Tax Comm'n,* 560 S.W.2d 837, 838[1, 2] (Mo. banc 1977).

There was no dispute as to the content of the colloquy upon which the order of discipline and suspension of Sergeant Rice rests, and it was formally found as fact by the court. Other facts operative to the judgment are intermixed with conclusion of law 7. They express, among others: "Officer Laningham took the comment as a joke;" "She was not offended by the remark;" and "the testimony of Officer John Rogers to the effect that the statement made him feel uncomfortable is not creditable." These all relate more nearly to inquiries of sexual harassment in the workplace than to the administration of a policy

engendered by the board of police commissioners to ensure a capable and efficient police force in the service of the public safety and general welfare. *State ex rel. Murphy v. Burney,* 269 Mo. 602, 191 S.W. 981, 983[1, 2] (banc 1917).

■ The adjudication and the judgment that resulted did not conform to the function assigned to the circuit court by § 536.-150.1 in the review of this noncontested case: to "determine the facts relevant to the question whether such person [Rice] at the time of such decision was subject to such legal duty [violation of the police department personnel policy] ... and ... determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion." The court determined, rather, that no legal duty was owed one officer by another under the policy rule, that the actual issue was whether Rice's conduct was sexual harassment, and none was shown by the evidence. The decision for review, of course, was the violation of the policy according to its own terms, and not as an interpolated interdiction of sexual harassment. For that reason alone, the judgment based on such an adjudication is void. *Brown v. Wilson,* 155 S.W.2d at 180[13–16]; *Keen v. Dismuke,* 667 S.W.2d at 453[1, 2].

The adjudication was also misdirected. It was misdirected because it is the role of the circuit court in a review under § 536.-150.1 to make the judgment as to the lawfulness of the administrative decision "in view of the facts as they appear to the court," and not as they appeared to the administrative officer. The circuit court did indeed make findings of fact, but not "to determine the facts relevant to the question" at issue, the lawfulness of the administrative decision that Rice violated the personnel rule. § 536.150.1. The findings of fact, rather, relate to a judgment that adjudicates intermixed theories; one void as beyond the pleadings, the other indeterminate because already disclaimed as a basis for decision.

■ The court of appeals reviews the judgment of the circuit court in a noncontested case under § 536.150.1 essentially as other judgments declared in a case tried to the court without a jury. *Citizens for Safe Waste Management v. St. Louis County,* 810 S.W.2d 635, 641[13–15] (Mo.App.1991). The scope of our review is as defined by Rule 73.01, as construed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Accordingly, the court of appeals reviews the judgment of the circuit court to determine whether the adjudication that the administrative decision was or was not "unconstitutional, unlawful, unreasonable, arbitrary or capricious or involves an abuse of discretion" [§ 536.150.1] rests on substantial evidence and validly decides the questions of law. In that exercise, the court of appeals may weigh the evidence before the circuit court when the record engenders a firm belief that the judgment is wrong. *Murphy v. Carron,* 536 S.W.2d at 32[1–3]; *Phipps v. School Dist. of Kansas City,* 645 S.W.2d at 97.

The judgment is wrong for the reasons already given. We render the judgment that the circuit court should have given and dispose finally of the case. Rule 84.14.

■ The words spoken between Sergeant Rice and Officer Laningham are not in dispute. Nor is there doubt that they were heard by Officer Rogers. Laningham testified that her response to the comment by Rice was to laugh and say, "That wouldn't take long." She interpreted the remark as "a stupid joke." On cross-examination she acknowledged that she thought it was a joke. On redirect she reasserted that it was a stupid joke and left the room because she didn't "feel comfortable at that point." From this essential evidence, the circuit court found: "Officer Laningham took the comment as a joke. She was not offended by the remark." Those findings, intermixed with conclusion of law 7, are against the weight of the evidence.

The court also "specifically" found that the testimony of Officer Rogers to the effect that the statement made him feel uncomfortable was not credible. Our review of the record engenders a firm belief that

the judgment of the circuit court is wrong, both for the formal reasons found and as against the weight of the evidence. *Id.* at 97; *Murphy v. Carron*, 536 S.W.2d at 32[1–2]. Accordingly, it is irrelevant to our decision that the circuit court did not believe the testimony of Officer Rogers.

Chief of Police Bishop explained the factors he considered in the decision to discipline Rice:

First, I looked at the fact that Sergeant Rice made what I felt was an inappropriate comment to a female subordinate who was a probationary officer who was being socialized into a new organization and under severe pressure for good performance to retain her job and also, the fact that he made that comment in front of other subordinates he supervised and in my judgment, that created a clearly uncomfortable environment for her. I also considered the statements of Officer Rogers and Officer Laningham. It was clear to me from the file, Your Honor, that Officer Rogers perceived the remark as, I believe in his words, sexually suggestive. And it created an uncomfortable intense environment in that room. Officer Laningham herself said she felt the remark was certainly inappropriate and it did make her feel uncomfortable. I also considered, Your Honor, the fact that was not the first time Sergeant Rice had made an inappropriate remark to a female subordinate. In June of '90, he had also made a similar remark for which he was counseled. When you take the totality of those circumstances, in order for me to maintain, I think, discipline and order within the police department which is indeed my responsibility, and I think more importantly, Your Honor, to maintain the public trust and confidence in the department and to make sure that Sergeant Rice did in fact correct this errant behavior, I imposed 5 suspension days.

The Police Chief also explained that in his twenty-two years on the police force, precinct stations and roll call rooms, he had never heard "a male officer, male supervisor or commander refer to either a male police officer with a cold or a female officer with a cold that such a remedy might be a chest rub."

It was brought to the attention of the witness that the records reflected that the earlier discipline by counselling was imposed upon Rice not for an inappropriate comment to another female officer but for comments to other officers of performance deficiency of a female officer. Police Chief Bishop acknowledged that correction but reaffirmed nevertheless, "[o]nce again, it was a case of bad judgment on the part of a supervisor."

In view of the evidence before the circuit court, a determination that Sergeant Rice did not violate Rule 9 of the police department personnel was against the weight of the evidence. The imposition of the five day suspension with loss of pay sanction was a disciple well within the discretion allowed Chief of Police Bishop by § 84.500. It is a "discretion legally vested" in the administrative officer by statute and the of kind for which a court cannot substitute its own. § 536.150.1; *State ex rel. Baer v. Campbell*, 794 S.W.2d 690, 692[6] (Mo.App. 1990).

To the extent that the judgment of the circuit court rests on grounds not pleaded, it is void and erroneously applies and declares the law. To the extent that the judgment may adjudicate that the decision of Police Chief Bishop to suspend Sergeant Rice for five days without pay "is arbitrary and capricious", it is against the weight of the evidence and wrong. *Murphy v. Carron*, 536 S.W.2d at 32[1, 2].

The judgment of the circuit court is reversed and remanded with direction that the circuit court enter judgment that the decision of the Chief of Police be affirmed.

All concur.