

# In the Missouri Court of Appeals Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| BG OLIVE & GRAESER, LLC, AND FORSYTH INVESTMENTS, LLC, | ) | ED109879 |
| | ) | |
| | ) | Appeal from the Circuit Court of |
| Respondents, | ) | St. Louis County |
| | ) | 20SL-CC04674 |
| v. | ) | |
| | ) | Honorable Nancy Watkins McLaughlin |
| CITY OF CREVE COEUR, MISSOURI, | ) | |
| | ) | Filed: April 5, 2022 |
| Appellant. | ) | |

The City of Creve Coeur (City) appeals from the circuit court's judgment ordering the City to issue QuikTrip a conditional use permit (CUP) to redevelop certain property. We affirm.

## BACKGROUND

BG Olive & Graeser, LLC and Forsyth Investments, LLC (Plaintiffs) are the owners of adjacent properties located on a signalized section of Olive Boulevard in Creve Coeur (the Properties). The Properties are located in an area that is zoned for commercial use by the City. Plaintiffs entered into an agreement to sell the Properties to QuikTrip, which was contingent upon QuikTrip obtaining a CUP from the City to develop a new convenience store and service station on a portion of the Properties.

The City's procedures governing CUP applications are set forth in Section 405.1070 of the Creve Coeur City Code (City Code), which provides:

E. Standards. The City Council shall not approve a conditional use unless it finds that the application and evidence presented clearly indicate that the proposed conditional use:

> 1. Complies with all other applicable provisions of this Chapter including environmental performance standards presented in Section 405.550, the criteria in Section 405.470 and the standards of this Chapter in regard to yard and setback, parking and loading areas, screening and buffering, refuse, storage and service areas and signs.
> 2. Will contribute to and promote the community welfare and convenience at the specific location.
> 3. Will not cause substantial injury to the value of neighboring property.
> 4. Meets the applicable provisions of the City's Comprehensive Plan and any applicable neighborhood or sector plans and complies with other applicable zoning district regulations and provisions of this Chapter, unless good cause exists for deviation there from.
> 5. Will provide, if applicable, erosion control and on-site stormwater detention in accordance with the standards contained in this Chapter.
> 6. Will be compatible with the surrounding area and thus will not impose an excessive burden or have a substantial negative impact on surrounding or adjacent users or on community facilities or services.

QuikTrip filed its CUP application, and subsequently spent hundreds of hours meeting with City staff members led by the Director of Community Development, Jason Jaggi (Director Jaggi). As a result of these meetings, QuikTrip conformed its application to the official criteria for approval and agreed to dozens of modifications requested by the City staff. The modifications included, *inter alia*, QuikTrip using custom Sonoma stone in its design, removing its signature red signage, and paying to reconfigure the adjacent intersection. After months of evaluating QuikTrip's application, Director Jaggi concluded it satisfied the six standards and the City should issue the CUP to QuikTrip.

The Creve Coeur City Council (City Council) held hearings on QuikTrip's application, which we have previously held do not rise to the level of formality necessary for a contested case. *450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur, Missouri*, 477 S.W.3d 49, 54 (Mo. App. E.D. 2015) ("Nothing in City Code section 405.1070 requires that the hearing be

2

conducted on the record, that witnesses give testimony under oath, that witnesses may be examined and cross-examined, that formal rules of evidence be followed, or that the agency render written findings of fact and conclusions of law."). The City Council voted unanimously to deny QuikTrip's CUP application.

Plaintiffs filed a petition in the circuit court of St. Louis County seeking judicial review of the City Council's decision pursuant to Section 536.150 RSMo (2016).[1] A trial was scheduled, and the parties filed a joint stipulation agreeing that QuikTrip's application satisfied standards 1 and 5 in City Code Section 405.1070(E). At trial, the circuit court first inquired, and the parties confirmed, that this was indeed a trial *de novo* in a non-contested case. Plaintiffs introduced testimony of four witnesses, three of whom were experts in their fields of city planning, real estate appraisal, and traffic engineering, who opined that QuikTrip's CUP application satisfied all six standards in City Code Section 405.1070(E). The City presented the testimony of two witnesses: (1) Director Jaggi, as the City's representative; and (2) Brett Berger, a concerned resident of self-described "luxury homes" located near the proposed development. Neither of the City's witnesses testified as to the City Council's basis for denying QuikTrip's CUP application.

The circuit court found credible evidence established that each standard had been satisfied and the City's refusal to issue the CUP was therefore unlawful, unreasonable, arbitrary, capricious, and constituted an abuse of discretion. Consequently, the circuit court entered an Order in Mandamus directing the City to issue a CUP to QuikTrip with the same conditions and terms set forth in the proposed ordinance (Bill No. 5831) on or before August 13, 2021. The City appeals.

---

[1] All statutory references are to RSMo (2016), unless otherwise indicated.

## DISCUSSION

The City raises four points on appeal challenging the circuit court's judgment granting QuikTrip a CUP. First, the City argues the circuit court erred because it exceeded its authority under Section 536.150 by making its own independent decision regarding whether the CUP should be granted. Second, the City asserts the circuit court erred because it exceeded the scope of permissible relief by ordering the City to grant QuikTrip a CUP. Third, the City claims the circuit court erred because it failed to find that QuikTrip's application for a CUP "clearly" met the standards set forth in City Code Section 405.1070(E). Fourth, the City argues the circuit court erred because its decision was against the weight of evidence.

### *Standard of Review*

On appeal from the circuit court of a non-contested case, we review the judgment of the circuit court, rather than the decision of the administrative agency. *Sanders v. City of Columbia*, 481 S.W.3d 136, 144 n.7 (Mo. App. W.D. 2016). Appellate review of a judgment in a non-contested case is the same as in other court-tried cases. *See Mosley v. Members of Civil Serv. Bd. for City of Berkeley*, 23 S.W.3d 855, 860 (Mo. App. E.D. 2000); *Citizens for Safe Waste Mgmt. v. St. Louis Cnty.*, 810 S.W.2d 635, 641 (Mo. App. E.D. 1991). "In a court-tried case, an appellate court must affirm the circuit court's judgment 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Empire Dist. Elec. Co. v. Scorse*, 620 S.W.3d 216, 224 (Mo. banc 2021) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). An appellate court must defer to the circuit court's determinations of credibility and view all facts and any inferences drawn therefrom in the light most favorable to the judgment. *O'Brien v. O'Brien*, 611 S.W.3d 522, 524 (Mo. App. W.D. 2020).

4

**Point I**

The City argues the circuit court erred in entering an Order in Mandamus requiring the City Council to enact an ordinance granting QuikTrip a CUP because in doing so the circuit court exceeded its authority under Section 536.150. The City asserts the circuit court must review the decision of the City Council for error rather than make its own independent decision regarding whether the CUP should be granted. Plaintiffs respond that the circuit court correctly applied the *de novo* standard of review to the City Council's decision.

*Analysis*

City Code Section 405.1070 sets forth the City's procedures and standards used in determining whether to grant a CUP. In *450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur*, we held City Code Section 405.1070 did not meet the requirements of contested cases, and therefore review of decisions pursuant to that ordinance was governed by Section 536.150. 477 S.W.3d at 52-56. Here, the City Council's decision whether to grant a CUP was controlled by the same City Code Section 405.1070 that was at issue in *450 N. Lindbergh*, which has not been amended in the seven years since our prior decision. Therefore, this case was properly characterized as non-contested and reviewed pursuant to Section 536.150.

Section 536.150.1 provides for judicial review of non-contested administrative decisions:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary,

5

or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

"In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision." *Furlong Co., Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006) (citing *Phipps v. Sch. Dist. of Kansas City*, 645 S.W.2d 91, 94-95 (Mo. App. W.D. 1982)). The circuit court "conducts a hearing *de novo* on an original action *to determine post hoc on the facts as found by the court* whether the administrative decision conforms to the constitution, the laws, and is not otherwise 'unreasonable, arbitrary or capricious or involves an abuse of discretion.'" *Phipps*, 645 S.W.2d at 95 (emphasis in original) (citing Section 536.150). Thus, the circuit court under Section 536.150 "does not *review* evidence but *determines* evidence, and on the facts as found adjudges the validity of the agency decision." *Id.* (emphasis in original).

The City argues the circuit court erred by creating a record based on evidence the City Council did not consider in denying the CUP because Section 536.150 requires the court to review the City Council's decision, not to make its own decision. However, the City's position is plainly contradicted by binding precedent. In fact, the very argument asserted by the City here was rejected by the Missouri Supreme Court in *Furlong*, 189 S.W.3d at 166-68. In *Furlong*, the City of Kansas City argued "the trial court erred in granting a writ of mandamus because it exceeded its permissible scope of review by hearing the proceeding de novo in that review of a plat application denial is limited to the information presented to the city council." *Id.* at 166. The court held that Section 536.150's evidentiary standard – "as may be properly adduced" –

6

was not limited to a review of the administrative record because in non-contested cases the parties are "not afforded the ability to create a record upon which viable review could occur." *Id.* at 167. Thus, Furlong was entitled to present *any* evidence to the circuit court that was relevant to proving its application met the requirements for preliminary plat approval. *Id.*

Here, the circuit court properly heard evidence that was relevant to determining whether QuikTrip's application for a CUP satisfied City Code Section 405.1070(E). As decades of case law have consistently held, the circuit court did not err in making its own determination based upon that evidence. Point I is denied.

**Point II**

The City argues the circuit court erred in entering an Order in Mandamus requiring the City Council to enact an ordinance granting QuikTrip a CUP because in doing so the circuit court exercised discretion contrary to its authority under Section 536.150 and went beyond the scope of permissible relief. The City asserts Section 405.1070(A) and (E) of the City Code create and preserve to the City Council some discretionary authority. Plaintiffs respond that the City Council did not have the discretion to deny QuikTrip's application because it met the criteria enumerated in City Code Section 405.1070(E).

*Analysis*

Section 536.150.1 prohibits a circuit court reviewing a non-contested case from substituting its discretion for discretion legally vested in an administrative body or official. *See State ex rel. Rice v. Bishop*, 858 S.W.2d 732, 736 (Mo. App. W.D. 1993) (citing *Phipps*, 645 S.W.2d at 95). However, broad assertions of discretion do not insulate the administrative body or official's decision from judicial review. "The fact that the legislature has vested discretion in an administrative official does not preclude a reviewing court from determining whether his

7

findings were made or he otherwise acted in an unlawful, unconstitutional, arbitrary, capricious, unreasonable or abusive manner." *Barry Serv. Agency Co. v. Manning*, 891 S.W.2d 882, 892 (Mo. App. W.D. 1995). More importantly, in a non-contested case the circuit court "owes no deference to conform doubtful evidence to the administrative decision" because it has no administrative record to review. *Phipps*, 645 S.W.2d at 95.

In *Barry Service Agency Co. v. Manning*, evidence was presented regarding an administrative official's non-contested decision to disapprove certain proposed interest rates. 891 S.W.2d at 885-87. Although these rates met the criteria he considered in the approval process, he ultimately deemed the rates "inappropriate" because they were "too profitable." *Id.* at 892. Furthermore, the administrative official testified only that it would be impractical to set a specific "reasonable" rate of return and that he had no precise figure or range of figures in mind for what constituted a "reasonable" profit. *Id.* The trial court upheld the administrative official's decision because it concluded he had the discretion to determine whether proposed interest rates were appropriate. *Id.* However, the Western District reversed, holding that there was "absolutely no evidence in the record from which the trial court could find that the [administrative official] made his decision on the basis of anything other than surmise, guesswork, or a 'gut feeling.'" *Id.* at 892. The fact that the administrative official had "some discretion" to determine whether a proposed rate was appropriate did not "extend[] an open invitation to act in a totally subjective manner without any guidelines or criteria, or without substantial evidence to support such a determination." *Id.* at 893-94.

At trial here, the City failed to present any evidence showing that the City Council was in fact lawfully exercising its discretion when it denied QuikTrip's application. The City Council did not issue any findings or conclusions explaining its decision. More importantly, in spite of

8

its opportunity to be heard, the City failed to present evidence to support the City Council's decision.

The City's evidence included the meeting minutes from the hearing in which the City Council denied QuikTrip's application, but these merely provide questions and general comments on the application by a few City Council members prior to the vote. Indeed, Director Jaggi, the City's own witness and representative who was called to provide support for the City Council's decision, testified that the City Council members' questions and comments did not necessarily impact their vote. Director Jaggi believed "resident opposition" was a factor in the City Council's decision, and actually disagreed with the City Council's decision to deny QuikTrip's application. When asked whether QuikTrip's CUP application should have been approved, Director Jaggi testified that he believed "as a staff person, as a professional planner, that there were more reasons to approve the project. That it had a high level of compliance with a lot of our subjective standard ordinances for conditional use permits, yes."

The City's second witness, Berger, testified about the great lengths to which he went to oppose QuikTrip's application, including online research, gathering signatures for a petition, and communicating with City Council members. But nothing in Berger's testimony addressed whether the City Council exercised any discretion or demonstrated an actual basis for its decision to deny QuikTrip's application.

Even in *Barry*, where the administrative official testified as to the basis for his decision that the proposed rates were inappropriate, the circuit court erred in finding his decision was not arbitrary or capricious because the official did not adequately explain the criteria he used to make his decision. *Barry*, 891 S.W.2d at 893-94. In contrast, the City failed to introduce any evidence explaining the actual basis for the City Council's decision to deny QuikTrip's

9

application.  In the absence of evidence establishing the basis for the City Council's decision, the circuit court did not err by finding the City Council's decision was arbitrary and capricious.

The City nonetheless argues the circuit court erred by substituting its discretion for the discretion legally vested in the City Council.  But whether the City Council possessed any discretion, or the lawful extent of such discretion, is irrelevant here because the City did not establish *any* basis for the City Council's decision, much less a discretionary one.  Thus, even if the City is correct that the City Council possessed *some* discretion, it failed to show how that discretion was actually exercised in denying QuikTrip's application, and that such exercise was not totally subjective.  Under these circumstances, the circuit court was not required to conform to the City's arguments without supporting evidence and did not err in finding the City Council's decision was arbitrary and capricious.  Point II is denied.

**Point III**

The City argues the circuit court erred in entering an Order in Mandamus requiring the City Council to enact an ordinance granting QuikTrip a CUP because the circuit court did not find that the application "clearly" met each of the standards set out in City Code Section 405.1070(E).  Plaintiffs respond that the City failed to preserve its allegation of error.

*Analysis*

Missouri Supreme Court Rule 78.07(c)[2] provides, "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."  "The purpose of Rule 78.07(c) is to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily

---

[2] All rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

corrected, alleviating needless appeals, reversals, and rehearings." *Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 788 (Mo. App. W.D. 2019) (quoting *Dunlap v. State*, 452 S.W.3d 257, 263 (Mo. App. W.D. 2015)).  The failure to file a Rule 78.07(c) motion constitutes a waiver of any subsequent argument challenging the form or language of the judgment.  *Id.*

Here, the City argues the circuit court erred because its judgment failed to find that the standards were "clearly" satisfied, and only found that the standards were satisfied.  Despite framing its argument as one relating to the standard of proof applied by the circuit court, the City tellingly does not explain how the evidence relied upon by the court failed to meet this higher burden.  We agree with Plaintiffs that the City is actually complaining about the language used in the judgment, and that the City failed to bring the claim to the circuit court's attention by filing a Rule 78.07(c) motion.  Thus, the City's failure to file a Rule 78.07(c) motion waived its argument.  Point III is denied.

**Point IV**

The City argues the circuit court erred in entering an Order in Mandamus requiring the City Council to enact an ordinance granting QuikTrip a CUP because that decision was against the weight of the evidence.  The City asserts the evidence showed that QuikTrip's business was not a "neighborhood service business" and therefore failed to satisfy standard 4.  Plaintiffs respond that the circuit court's finding that standard 4 was satisfied was not against the weight of the evidence.

*Analysis*

Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence.  *Ivie v. Smith*, 439 S.W.3d

11

189, 205 (Mo. banc 2014). The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in the rare case that it has a firm belief that the decree or judgment is wrong. *Id.* at 206. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. *Id.* We defer to the circuit court's credibility determinations because it is in a better position to weigh the contested and conflicting evidence in the context of the whole case. *Id.*

Standard 4 requires that the proposed use "[m]eets the applicable provisions of the City's Comprehensive Plan and any applicable neighborhood or sector plans and complies with other applicable zoning district regulations and provisions of this Chapter, unless good cause exists for deviation there from." City Code Section 405.1070(E)(4). The City's Comprehensive Plan states in relevant part:

> The Vision for East Olive is to create a walkable corridor of destination retail boutiques, neighborhood service businesses, small-scale restaurants, attached townhomes, and low-density multi-family homes and single family homes. Development of the East Olive corridor should encourage pedestrian access from adjacent neighborhoods and priority walkability between neighboring lots while accommodating car access and easy parking.

The City argues that the circuit court's finding that standard 4 was satisfied "necessarily includes a finding that" the proposed QuikTrip station is either a destination retail boutique, neighborhood service business, small-scale restaurant, attached townhomes, low-density multi-family home, or single-family home. The City asserts that this implicit finding regarding a single aspect of the Comprehensive Plan was against the weight of the evidence, and therefore the circuit court erred in ordering the City Council to grant QuikTrip a CUP. We disagree.

12

It was not essential to the circuit court's judgment that QuikTrip's proposed use was classified as any of the categories listed above, including a "neighborhood service business." As previously discussed, the City's own witness and representative, Director Jaggi, testified that complete compliance with every single component of the Comprehensive Plan is neither possible nor necessary to approve a CUP application. Director Jaggi explained that the relevant question is whether the proposed use is generally consistent with the Comprehensive Plan. And to this question, he testified that QuikTrip's proposed use was generally consistent with the Comprehensive Plan. Additionally, Plaintiffs' expert witness with five decades of city planning experience, John Brancaglione, testified the proposed QuikTrip development was consistent with the City's Comprehensive Plan and vision for the East Olive Corridor, which the circuit court explicitly found credible. In light of the foregoing evidence, the circuit court's finding that standard 4 was satisfied was not against the weight of the evidence. Point IV is denied.

## CONCLUSION

The judgment of the circuit court is affirmed.

_____
Lisa P. Page, Judge

Michael E. Gardner, P.J. and
James M. Dowd, J., concur.